# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | | |
|---|---|---|
| Kimberly Stanfield Gravitt, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Nationwide Recovery Service, Inc., | ) | **COMPLAINT** |
| | ) | **WITH JURY TRIAL DEMAND** |
| Defendant. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based on Defendant's false reporting on Plaintiff's credit file and/or consumer reports and failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

## PARTIES

1. Plaintiff, Kimberly Stanfield Gravitt, is a natural person who resides in Gordon County, Georgia.

2. Plaintiff is allegedly obligated to pay a consumer debt and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

3. Defendant, Nationwide Recovery Service, Inc., is a corporation formed under the laws of the State of Tennessee. Defendant may be served with process via its registered agent, National Registered Agents, Inc., at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

4. Defendant uses interstate commerce and/or mail in its business. The principal purpose of Defendant's business is the collection of consumer debts. Defendant also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Defendant is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

5. Defendant touts on its website its skill in utilizing credit reporting as a consumer debt collection technique, writing "*Nationwide Recovery Service provides...[o]nline, real time access to external resources like skip tracing tools and credit bureaus.*" See, www.nrsagency.com/technology.asp. (Last visited May 31, 2017.)

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

8. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Rome Division because the conduct complained of herein occurred in Gordon County, which is in the Rome Division.

**Factual Allegations Derived from Plaintiff's Bankruptcy Case**

9. On July 30, 2015, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Rome Division, Case Number 15-41757 (the "Bankruptcy Case").

10. In Schedule F of her Bankruptcy Petition, Plaintiff listed Defendant as having an unsecured claim in the amount of $55.00 (the "Debt").

11. The Debt referenced herein arose out of medical services provided to the Plaintiff and is thus a "consumer debt" as defined by 15 U.S.C. § 1692a.

12. Pursuant to 11 U.S.C. § 362, Defendant was "stayed" from taking any action of any kind in furtherance of the collection of its debt outside the confines of the Bankruptcy Court as of July 30, 2015.

3

13. On August 2, 2015, Defendant was served with notice of the commencement of Plaintiff's Bankruptcy Case and its inclusion as a creditor by

```
Case 15-41757-pwb   Doc 11   Filed 08/02/15   Entered 08/03/15 01:41:40   Desc Imaged
                             Certificate of Notice    Page 7 of 7
                             United States Bankruptcy Court
                             Northern District of Georgia

In re:                                                               Case No. 15-41757-pwb
Kimberly Stanfield Gravitt                                           Chapter 13
          Debtor
                                  CERTIFICATE OF NOTICE
District/off: 113E-6           User: sjones              Page 1 of 1          Date Rcvd: Jul 31, 2015
                               Form ID: pdf589           Total Noticed: 16

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Aug 02, 2015.
tr              +Mary Ida Townson,   Chapter 13 Trustee,   Suite 2200,   191 Peachtree Street, NE,
                  Atlanta, GA 30303-1770
19215275       ++CITIBANK,   PO BOX 790034,   ST LOUIS MO 63179-0034
                  (address filed with court: Childrens Place/Citicorp Credit Services,
                  Attn: Citicorp Credit Services,   PO Box 20507,   Kansas City, MO 64195)
19215274        +Calhoun Finance,   822 South Wall Street,   Calhoun, GA 30701-2618
19215276        +Cntry Door,   Attn:Bankruptcy,   PO Box 2830,   Monroe, WI 53566-8030
19215277        +Courtesy Finance,   1426 Turner McCall,   Rome, GA 30161-6072
19215278        +Familysavfcu,   711 E Meighan Bv,   Gadsden, AL 35903-1996
19215279        +Ginnys/Swiss Colony Inc,   Attn: Bankruptcy,   1112 7th Ave,   Monroe, WI 53566-1364
19215280        +Gordon Medical,   1035 Red Bull Road,   Calhoun, GA 30701-6010
19215282        +Nationwd Rec,   Po Box 8005,   Cleveland, TN 37320-8005
19215283        +Premier Fin,   5312 Brainerd Rd,   Chattanooga, TN 37411-5327
19215284         Security Fin,   C/o Security Finan,   Spartanburg, SC 29304
19215288       ++WELLS FARGO BANK NA,   WELLS FARGO HOME MORTGAGE AMERICAS SERVICING,
                  ATTN BANKRUPTCY DEPT MAC X7801-014,   3476 STATEVIEW BLVD,   FORT MILL SC 29715-7203
                  (address filed with court: Wells Fargo Hm Mortgag,   8480 Stagecoach Cir,
                  Frederick, MD 21701)

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
19215281         E-mail/PDF: gecsedi@recoverycorp.com Jul 31 2015 21:34:20     Green Tree Servicing L,
                  332 Minnesota St Ste 610,   Saint Paul, MN 55101
19215285        +E-mail/Text: bankruptcy.noticing@security-finance.com Jul 31 2015 21:25:00     Security Finance,
                  c/o Central Bkcy & Recovery,   PO Box 1893,   Spartanburg, SC 29304-1893
19215286        +E-mail/Text: bankruptcy.noticing@security-finance.com Jul 31 2015 21:25:00     Security Finance,
                  239 W. Belmont Drive,   Suite 6,   Calhoun, GA 30701-3184
19215287        +E-mail/Text: fhbankruptcy@bluestembrands.com Jul 31 2015 21:27:19     Webbnk/fstr,
                  6250 Ridgewood Road,   St Cloud, MN 56303-0820
                                                                                              TOTAL: 4

                ***** BYPASSED RECIPIENTS *****
NONE.                                                                                         TOTAL: 0
```

the Bankruptcy Noticing Center. The relevant portion of the notice, highlighted for ease of reference, is reproduced below,

14. On September 9, 2015, Plaintiff filed her original Chapter 13 Plan (the "Plan") setting forth her proposed treatment of her debts including that owed to Defendant. On September 16, 2015, Plaintiff's Plan was confirmed. Defendant was served with a copy of the Confirmation Order on September 18, 2015, by the Bankruptcy Noticing Center.

15. Following confirmation, Defendant was bound by the terms of the Plan.

16. Plaintiff's Bankruptcy Case is continuing, and Plaintiff is performing per her confirmed Plan. Plaintiff has not received a discharge of her debts.

17. At no time prior to the filing of this action has Defendant sought or obtained relief from the Bankruptcy Court to continue collection activity against Plaintiff.

**Factual Allegations Pertinent to CDIA and Metro 2 Reporting Standards**

18. The reporting of consumer credit information, by credit reporting agencies ("CRAs") and data furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three

million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

19. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

20. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

21. To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

22. The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers, to assist each in maintaining compliance with FCRA regulations.

23. Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

24. In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.
See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

25. The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete and timely data, and has developed the Metro 2 standards. *Id.*

26. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

27. It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of

information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

28. 15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Further, 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies, to make sure the information is complete and accurate.

29. Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that "will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "<u>All</u> accounts <u>must</u> be reported on a monthly basis." (Emphasis added.) *Id.*

30. Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

31. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

32. At all times relevant hereto Defendant warranted and or represented to Experian and TransUnion that it had adopted and implemented the Metro 2 format for its reporting of consumer data and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

33. Defendant has, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into its own internal policies and procedures.

34. Defendant has actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendant, assume Defendant's compliance with Metro 2 standards.

35. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading and adversely affecting the consumer.

**Factual Allegations Derived from Reporting to Experian**

36. On or about October 25, 2016, Plaintiff obtained a copy of her consumer report as published by Experian.

37. That report contained erroneous information as provided by Defendant. Specifically, the report showed the Debt as in active collections, with a past due balance of $55.00.

38. The relevant portion of the Defendant tradeline appeared in the October 25, 2016, Experian report as follows:

```
NATIONWIDE RECOVERY          Date opened      Type            Credit limit or    Recent balance        Responsibility
SERVICES                     Jul 2012         Collection      original amount    $55 as of Oct 2016    Individual
545 INMAN ST                 First reported   Terms           $55                                      Status
CLEVELAND TN 37311           Nov 2013         1 Months        High balance                             Collection account. $55 past due as of Oct 2016.
Phone number                 Date of status   Monthly         Not reported                             This account is scheduled to continue on record until Nov
(423) 472 4600               Dec 2013         payment                                                  2018.
Partial account number                        Not reported
1975654
Address identification number
0067590134
Original creditor HARBIN CLINIC
LLC
```

39. Because Plaintiff's debt to Defendant is included in her Bankruptcy Case and provided for in the Plan as stated above, Defendant should have reported the status of the Debt as "included in bankruptcy," or some similar designation, with no post-filing derogatory information.

40. The information reported by Defendant to Experian was both false and misleading in that it would lead a subscriber to believe that the Defendant's claim was not included in the Plaintiff's bankruptcy case and that the Plaintiff was thus subject to additional collection measures including legal process.

41. The false report made by Defendant to Experian was in furtherance of its efforts to collect its debt from Plaintiff.

### Factual Allegations Derived from Reporting to TransUnion

42. On or about October 25, 2016, Plaintiff obtained a copy of her consumer report as published by TransUnion.

43. That report contained erroneous information as provided by Defendant. Specifically, the report showed the Debt as in active collections, with a past due balance of $55.00.

44. The relevant portion of the Defendant tradeline appeared in the October 25, 2016, TransUnion report as follows:

```
NATIONWIDE RECOVERY SERV #19756** (545 W INMAN ST, CLEVELAND, TN 37311, (800) 776-4600)
Placed for collection: 07/03/2012    Balance:          $55                                  Pay Status: >In Collection<
Responsibility:    Individual Account    Date Updated:     09/16/2016
Account Type:      Open Account          Original Amount:  $55
Loan Type:         COLLECTION AGENCY/ATTORNEY   Original Creditor: MEDICAL-HARBIN CLINIC LLC
                                                                   (Medical/Health Care)
                                         Past Due:         >$55<
```

45. Because Plaintiff's debt to Defendant is included in her Bankruptcy Case and provided for in the Plan as stated above, Defendant should have reported the status of the Debt as "included in bankruptcy," or some similar designation, with no post-filing derogatory information.

46. The information reported by Defendant to TransUnion was both false and misleading in that it would lead a subscriber to believe that the Defendant's

claim was not included in the Plaintiff's bankruptcy case and that the Plaintiff was thus subject to additional collection measures including legal process..

47. The false report made by Defendant to TransUnion was in furtherance of its efforts to collect its debt from Plaintiff.

## Damages

48. Defendant had actual notice that the information it was reporting regarding Plaintiff to the various credit reporting agencies was false, deceptive, and misleading.

49. Accordingly, Defendant's conduct was willful.

50. As a result of Defendant's willful actions and omissions, Plaintiff is eligible for statutory damages.

51. Additionally, as a result of Defendant's actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendant's wrongful representations, frustration and anxiety as a result of the knowledge that Defendant is pursuing its collection strategy despite her Bankruptcy Case, and worry over the repercussions of Defendant's conduct.

52. As a result of the actions and omissions of Defendant, Plaintiff's actual damages also include the illegitimate suppression of her Fair Isaac Corporation ("FICO") credit score and other credit rating model scores.

53. The false information reported by Defendant creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's future credit-worthiness.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10)

54. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully stated herein.

55. Defendant's provision of false and/or misleading information to Experian and Trans Union in connection with its attempts to collect the alleged debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

56. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

57. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendant $1,000.00 in statutory damages and reasonable attorney's fees and costs.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-393(a)

58. Plaintiff incorporates by reference paragraphs 1 through 57 as though fully stated herein.

59. O.C.G.A. § 10-1-393(a) broadly prohibits unfair business practices.

60. It was unfair and deceptive for Defendant to falsely report the status of Plaintiff's account to Experian and Trans Union in an effort to collect a debt that was scheduled in bankruptcy.

61. As pled above, Plaintiff was harmed by Defendant's unfair conduct.

62. Upon information and belief, Defendant regularly reports information to credit reporting agencies in an effort to collect outstanding debts.

63. Upon information and belief, reports to credit reporting agencies are Defendant's *modus operandi* for debt collection and are done on a wide scale.

64. Defendant's conduct amounts to an unfair business practice.

65. Defendant's conduct has implications for the consuming public in general and potential negative impact on the consumer marketplace.

66. In accordance with the requirements of O.C.G.A. § 10-1-399(b) Plaintiff notified Defendant, by certified mail dated April 17, 2017 and, later, by

email to Defendant's counsel, of the particulars of Plaintiff's claims and the terms under which Plaintiff would settle her claims prior to litigation. Defendant did not exercise its right to respond with a written tender of settlement..

67. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

68. As a result of Defendant's willful and wanton violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

69. Defendant's actions were intentional, rendering it liable for treble damages pursuant to O.C.G.A. § 10-1-399(c).

70. Plaintiff is entitled to recover reasonable attorney's fees and expenses pursuant to O.C.G.A. § 10-1-399(d).

71. Furthermore, because Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, Plaintiff is also entitled to an award of reasonable attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11.

## **TRIAL BY JURY**

Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) General, exemplary, and treble damages pursuant to O.C.G.A. §§ 10-1-399(a) & (c);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1692k and O.C.G.A. §§ 10-1-399(d) and/or 13-6-11; and

e.) Such other and further relief as may be just and proper.

Respectfully submitted this 5th day of June, 2017.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Caitlin M. Berry
Georgia Bar No.: 761404
*cberry@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorneys*